UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ROBERT KELLY,

               Petitioner,

    - against -

WILLIAM A. LEE,

               Respondent.

-------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-3903 (CBA)

**AMON, Chief United States District Judge.**

Robert Kelly, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to vacate his New York state conviction following a jury trial in the Supreme Court of New York, Kings County, of rape, performing criminal sexual acts, robbery, and petit larceny. For the reasons stated below, Kelly's petition is denied.

BACKGROUND

**I. The Crime and Prosecution**

At approximately 12:30 a.m. on July 30, 2005, OL and George Santiago, while sitting in OL's car, were approached by four individuals who informed OL and Santiago that they were being robbed. OL and Santiago were directed to get in the back seat; forced to close their eyes and hand over their property, including their wallets and cellular telephones; and were then transported to 1495/1499 East 46th Street in Brooklyn, NY, where Kelly and Kelly's brother resided at the time. There, OL was repeatedly sexually assaulted. After approximately an hour and a half, OL and Santiago were let go, and they later went to the police to report what had happened. The police arrested Kelly, Raynold Voltaire, Yashika Cochrane, Etzer Edmee and Gerdzer Edmee (the "Edmee brothers") in connection with these crimes.

1

A. Pre-trial Hearing

Kelly was tried in Kings County Supreme Court in January 2007. On January 4, 2007, the court held a pre-trial hearing pursuant to People v. Huntley, 15 N.Y.2d 72 (1965) and Dunaway v. New York, 442 U.S. 200 (1979) to determine whether Kelly's post-arrest statements should be suppressed. During this hearing, counsel for Kelly argued that the court should also conduct a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967). Specifically, one of the trial witnesses, Beverly Johnson—who identified Kelly as one of the individuals she saw around the apartment complex at the time OL was sexually assaulted—had identified Kelly after the police presented her with a photo array. (Jan. 4, 2007 Hr'g Tr. at 2-3, 30-31.) The government argued that Johnson knew Kelly from the 1495/1499 East 46th Street apartment complex, where they both resided, and a Wade hearing was therefore not necessary. (Id. at 3, 31.) Defense counsel asserted that Kelly did not know anyone from the building and that his time living there had only been temporary. (Id. at 3.)

During the pre-trial hearing, Detective Steven Litwin testified that he met with Johnson on August 13, 2005. (Id. at 32.) Johnson told Detective Litwin that she knew Kelly as the brother of one of her neighbors in the apartment complex, and knew that Kelly's nickname was "Boo." (Id. at 33.) Detective Litwin further testified that Johnson told him that in the month before the alleged crimes she had seen Kelly around the apartment complex with his male accomplices—the Edmee brothers and Voltaire. (Id.) Johnson further stated that she saw Kelly numerous times during that month-long period. (Id.) Detective Litwin then showed Johnson a photo array and Johnson identified Kelly, stating "Number 1. That's Boo." (Id. at 35.) At the conclusion of the hearing, the court found that "the People have met their burden of proof as far

2

as the <u>Dunaway/Huntley</u> and even the – although this was not scheduled – the <u>Wade</u> portion of this hearing is concerned."[1] (<u>Id.</u> at 36.)

B. <u>Trial</u>

Trial commenced on January 9, 2007. Santiago and OL testified as to the events of July 30, 2005. They both testified that on July 30, 2005, they were sitting in OL's car, a white 2004 Altima, when at approximately 12:30 a.m. a woman approach the driver's side of the car and asked what time it was. (Jan. 9, 2007 Tr. ("Trial Tr.") at 94-95, 244-45.) Men then approached the passenger side of the car and said something to the effect of "this is a robbery." (<u>Id.</u> at 96-97.) OL and Santiago were instructed to get into the back of the car and four individuals got into the car, with a man in the driver's seat. (<u>Id.</u> at 97, 246.) OL and Santiago were instructed to close their eyes and hand over their possessions, including wallets, cell phones and jewelry. (<u>Id.</u> at 98, 247.) The man in the driver's seat asked OL how much money she had on her ATM card and forced her to provide her pin code. (<u>Id.</u> at 100, 250.) OL and Santiago were then driven to another location, at which time several of the individuals got out of the car. (<u>Id.</u> at 100, 251.) After the individuals came back to the car, OL and Santiago were driven to a second location and taken out of the car with towels over their heads so they were unable to see. (<u>Id.</u> at 101, 251.)

Santiago and OL were led down stairs and taken to two separate rooms. (<u>Id.</u> at 102, 252.) OL testified that four men then repeatedly sexually assaulted her. (<u>Id.</u> at 252-56.) After approximately an hour and a half, Santiago and OL were taken back to the car and driven to another location. (<u>Id.</u> at 105, 258.) The towels were taken off their heads but they were told not

---

[1] Although referred to as "the <u>Wade</u> portion" of the hearing, it appears that the hearing was held pursuant to <u>People v. Rodriguez</u>, 79 N.Y.2d 445 (1992). <u>See</u> <u>Stallings v. Woods</u>, No. 04-CV-4714(RLM), 2006 WL 842380, at *16 n.17 (E.D.N.Y. Mar. 27, 2006) ("In New York, a <u>Rodriguez</u> hearing is held in lieu of a <u>Wade</u> hearing when the prosecution alleges that, by virtue of a prior relationship between a witness and the defendant, the witness is 'impervious to police suggestion,' and her identification is therefore untainted by an otherwise suggestive pretrial identification procedure." (quoting <u>Rodriguez</u>, 79 N.Y.2d at 452)).

3

to open their eyes until they counted to 200. (Id. at 105, 258.) OL testified that they waited several minutes before opening their eyes and they subsequently notified the police. (Id. at 259.) OL was treated at Coney Island Hospital that day. Connie Sestito, a certified sexual assault forensic examiner at Coney Island Hospital, testified that she examined OL and found evidence of forcible sexual assault. (Id. at 373.)

Yashika Cochrane, one of Kelly's accomplices, also testified at trial. Cochrane had entered into a cooperation agreement with the government pursuant to which she pleaded guilty to attempted robbery in the second degree in exchange for her testimony against Kelly and other individuals involved in the July 30, 2005 crimes. (Id. at 400-03.) She testified that Kelly, who she knew by the nickname "Boo," had planned the robbery on the afternoon of July 29, 2005. (Id. at 383-84.) That evening, Cochrane left with Kelly, Kelly's brother, and the Edmee brothers to find someone to rob. (Id. at 386.) When they saw Santiago and OL in the car, Kelly directed Cochrane to go up to the car and ask for the time. (Id. at 388-89.) Santiago and OL were then told to get in the back of the car and Cochrane, the Edmee brothers, and Kelly got into the car, with Kelly in the driver's seat. (Id. at 390.) Cochrane testified that the car made two stops, the second of which was the apartment complex where Kelly lived. (Id. at 393.) Santiago and OL were taken into the basement and Cochrane did not see OL again. (Id. at 394.) Cochrane was then instructed to wipe down the car and when she returned to the basement, she saw that Raynold Voltaire had come out of his apartment. (Id. at 394-95.) Kelly then gave Cochrane money and she left the apartment building. (Id. at 395-96.)

Raynold Voltaire, another one of Kelly's accomplices, also testified at trial. Voltaire had similarly entered into a cooperation agreement with the government, pursuant to which he pleaded guilty to rape in the first degree in exchange for his testimony. (Id. at 157-59.) He

4

testified that he was the superintendent of the 1495/1499 East 46th Street apartment complex where OL was assaulted, and where Kelly resided for a period of time. (Id. at 112.) He testified that he knew Kelly only by the nickname "Boo," and that early in the morning of July 30, 2005 he was awoken in his apartment and told to come to the maintenance room. (Id. at 134-35.) There, he witnessed Kelly raping OL. (Id. at 137-39, 146.) He testified that he and the Edmee brothers also raped OL in the maintenance room. (Id. at 143-44.) Voltaire further testified that, after OL and Santiago were released, he went to 7-Eleven with Kelly, where they used OL's ATM card. (Id. at 149-50.) He identified Kelly as one of the individuals in the photographs derived from the 7-Eleven surveillance video. (Id. at 165-67.) The government entered into evidence both the surveillance video and the photographs derived from the video. (Id. at 161-63.)

In addition, Kelly's neighbor, Beverly Johnson, testified that she saw a white car—similar to OL's—parked outside the 1495/1499 East 46th Street apartment complex around 2 a.m. the morning of July 30, 2005. (Id. at 443-46.) She testified that she saw Voltaire and Kelly, who she knew as "Boo," on the ground floor of the apartment complex near the maintenance room, and that the light in the maintenance room was on. (Id. at 444.) Johnson identified Kelly in court as the individual she saw the morning of July 30, 2005. (Id. at 448.)

Detective Mark Sandow from the Crime Scene Unit testified that, on August 2, 2005, he searched the basement of the 1495/1499 East 46th Street apartment complex and found a number of items, including two condoms just outside the maintenance room and a number of cigarette butts inside the maintenance room. (Id. at 230.) Mary Quigg, an expert in the field of forensic biology employed at the Office of the Chief Medical Examiner, testified that she found Kelly's DNA on the inside of one of the condoms, (id. at 325-26), despite the fact that Kelly had

5

previously told police that he had never had sex there, (id. at 272-73). Additionally, Quigg testified that she found Kelly's DNA on two of the cigarette butts recovered from the maintenance room. (Id. at 339.)

Detective Litwin, who interviewed Kelly after his arrest, testified that Kelly told him he had been temporarily living at the 1495/1499 East 46th Street apartment complex, but that he also had an apartment at 218 St. James Place in Brooklyn, NY. (Id. at 273.) On August 3, 2005, Detective Steven Litwin and Detective Christopher Potenza searched Kelly's apartment at 1495/1499 East 46th Street. (Id. at 276-77.) Detective Litwin testified that there, he found a pair of grey men's Puma sneakers and a New York Yankees baseball cap, which he stated "appeared . . . [to be] the items that the defendant wore when he was depicted in surveillance photos from the 7-Eleven store on Utica Avenue." (Id. at 277.) He also testified that he saw various items, including a pair of new sneakers, a digital camera, and a bowling ball, which OL testified had been stolen from her car. (Id. at 260, 276-277.) Detective Litwin testified that he and Detective Potenza then left to secure a search warrant, but failed to properly secure the apartment. When Detective Litwin returned to the apartment on August 4, all of the items had been removed. (Id. at 278-80.)

On August 5, 2005, Detective Potenza and Detective Marage searched Kelly's other residence with the permission of Kelly's wife. Detective Potenza testified that he found a pair of sneakers at the second apartment, which were identical to the pair that went missing from the first apartment. (Id. at 437.) OL corroborated this testimony, testifying that the sneakers found at Kelly's apartment were identical to those worn by one of her rapists. (Id. at 264-65.)

At the conclusion of the trial, the jury convicted Kelly of four counts of Rape in the First Degree, N.Y. Penal Law §130.35(1), seven counts of Criminal Sexual Act in the First Degree,

6

N.Y. Penal Law § 130.50(1), two counts of Robbery in the Second Degree, P.L. § 160.10(1), and seven counts of Petit Larceny, N.Y. Penal Law § 155.25.

### C. Sentencing

Kelly was sentenced on February 2, 2007. The trial court found that, pursuant to New York Penal Law § 70.08, Kelly was a persistent violent felony offender based on two of his previous convictions: a 1982 conviction for Robbery in the First Degree and a 1987 conviction for Rape in the First Degree. (Feb. 2, 2007 Hr'g Tr. at 4-5.) Accordingly, the trial court was required to impose an indeterminate sentence of imprisonment, with a maximum term of life imprisonment. N.Y. Penal Law § 70.08(2). Kelly was sentenced to consecutive indeterminate prison terms of 25 years to life on each count of rape, criminal sexual act, and robbery, and a 1-year prison term on each of the petit larceny counts. (Feb. 2, 2007 Hr'g Tr. at 14.)

## II. Direct Appeal

Kelly timely appealed his conviction to the Appellate Division, Second Department and raised four arguments on appeal. First, he claimed that the trial court denied him due process when, based on Detective Litwin's testimony during the pre-trial hearing, it ruled that Johnson was so well acquainted with Kelly that her photo array identification was merely confirmatory, and accordingly did not hold a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967). Second, Kelly argued that he was denied due process and the right to a fair trial when Detective Litwin testified at trial that Kelly was one of the individuals in the photographs derived from the 7-Eleven surveillance video. Third, Kelly argued that he was denied effective assistance of counsel when his trial attorney failed to make objections on these two grounds at trial. Fourth, Kelly argued that the enhancement of his sentence pursuant to New York's persistent violent

felony offender statute violated his right to a jury under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). (<u>See</u> App. Br., D.E. # 7-1.)

On November 4, 2009, the Appellate Division affirmed Kelly's judgment of conviction. <u>People v. Kelly</u>, 67 A.D.3d 706 (2d Dep't 2009). The Appellate Division found three of Kelly's four claims to be unpreserved and, in any event, without merit. The only claim the Appellate Division did not reject as unpreserved was Kelly's ineffective assistance of counsel claim; the court denied this claim on the basis that Kelly received meaningful representation at trial. <u>Id.</u> at 707. The New York Court of Appeals denied petitioner's application for leave to appeal on March 29, 2010. <u>People v. Kelly</u>, 14 N.Y.3d 802 (2010).

## DISCUSSION

On June 30, 2011, Kelly filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to vacate his conviction on largely the same grounds he raised on direct appeal. Specifically, Kelly argues in his § 2254 petition that (1) the trial court violated his due process rights by denying him a <u>Wade</u> hearing; (2) he was denied due process and a fair trial when Detective Litwin identified Kelly as one of the individuals in photographs derived from the 7-Eleven surveillance video; (3) he received ineffective assistance of counsel when his trial counsel failed to object to Detective Litwin's trial testimony identifying Kelly in one of the photographs; and (4) the enhancement of his sentence under the persistent violent felony offender statute violated his right to a jury under <u>Apprendi</u>. (<u>See</u> Habeas Pet., D.E. # 1.) For the reasons set forth below, Kelly's habeas petition is denied.

### I. Procedural Default

As an initial matter, with the exception of his ineffective assistance of counsel claim, all of Kelly's claims are procedurally defaulted. "Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a federal claim 'rests on a state law ground that is

independent of the federal question and adequate to support the judgment.'" Clark v. Perez, 510

F.3d 382, 390 (2d Cir. 2008) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). When

a state court rejects a claim on the basis that petitioner failed to comply with a state procedural

rule, that procedural ground may constitute an independent and adequate state law ground which

bars federal habeas review. See Coleman, 501 U.S. at 729-30, 750. A state procedural bar is

adequate to support the judgment if the state rule "is firmly established and regularly followed."

Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 376

(2002)). However, "in certain limited circumstances, even firmly established and regularly

followed state rules will not foreclose review of a federal claim if the application of the rule in a

particular case is 'exorbitant.'" Id. at 713-14 (quoting Lee, 534 U.S. at 376).

Here, the Appellate Division rejected three of the four claims Kelly advances in his

habeas petition because, pursuant to New York's contemporaneous objection rule, they were

unpreserved for appellate review. The contemporaneous objection rule requires that a party

seeking to preserve a claim of error at trial must "protest . . . at the time of such ruling or

instruction or any subsequent time when the court had an opportunity of effectively changing the

same." N.Y. Crim. Proc. Law § 470.05(2); see also Whitley v. Ercole, 642 F.3d 278, 286 (2d

Cir. 2011) (explaining that the contemporaneous objection rule requires "'at the very least, that

any matter which a party wishes' to preserve for appellate review be 'brought to the attention of

the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and

thereby avert reversible error.'" (quoting People v. Luperon, 85 N.Y.2d 71, 78 (1995))). Relying

on this rule, the Appellate Division rejected Kelly's claims that (1) the trial court erred in

declining to conduct a Wade hearing, (2) he was denied a fair trial when Detective Litwin

identified Kelly as one of the individuals in the photographs derived from the 7-Eleven

surveillance video, and (3) his adjudication and sentence as a persistent violent felony offender violated his right to a jury under Apprendi.[2] People v. Kelly, 67 A.D.3d 706, 706-07 (2d Dep't 2009).

It is well-established that New York's contemporaneous objection rule is an independent and adequate state law ground that bars federal habeas review. See Whitley, 642 F.3d at 286-87. Given that trial counsel never raised these three claims before the trial court, the Appellate Division properly applied New York's contemporaneous objection rule to these claims and they are therefore procedurally defaulted.[3] The fact that the Appellate Division found, in the alternative, that these three claims were without merit does not alter this result. See Galdamez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005) ("[W]here a state court explicitly says that a particular claims fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred."); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000).

To overcome this procedural default, Kelly must show (1) "cause for the procedural default and prejudice resulting therefrom," Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991), or (2) "that he is actually innocent of the crime for which he has been convicted," Dunham v.

---

[2] Although the Appellate Division did not cite to a statute or case law in finding Kelly's Apprendi claim unpreserved, the Court assumes this ruling was based on the contemporaneous objection rule. Kelly did not raise his Apprendi claim at sentencing, and Apprendi claims are subject to the contemporaneous objection rule. See Ortiz v. Bradt, No. 13-CV-5420(BMC), 2013 WL 5775695, at *2 (E.D.N.Y. Oct. 25, 2013) (finding habeas petitioner's Apprendi challenge to New York's persistent violent felony offender statute procedurally defaulted when Appellate Division rejected claim as unpreserved under the contemporaneous objection rule, which constituted an independent and adequate state law ground). Moreover, there is no indication that the Appellate Division's ruling on this ground was interwoven with federal law. See, e.g., Ferguson v. Walsh, No. 09-CV-1575(DLI), 2011 WL 1527973, at *6 (E.D.N.Y. Apr. 20, 2011) (finding Appellate Division's determination that Apprendi claim was unpreserved did not bar federal habeas review because, in making this determination, the Appellate Division cited People v. Rosen, 96 N.Y.2d 329 (2001), a case in which the procedural ruling was interwoven with the court's rejection of the federal law claim on the merits).

[3] The Court notes that although trial counsel did initially argue that the trial court should hold a Wade hearing, (Jan. 4, 2007 Hr'g Tr. at 3, 31), trial counsel never objected to the trial court's ruling that the People had satisfied their burden during the Rodriguez hearing based on Detective Litwin's testimony, (id. at 36).

Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).

Kelly argues that he has established cause for the procedural default, and resulting prejudice, on the basis of his ineffective assistance of counsel claim. (Pet'r's Reply, D.E. # 8 at 4.) The Court notes, however, that Kelly's habeas petition only raises ineffective assistance of counsel with respect to his trial counsel's failure to object to Detective Litwin's trial testimony in which he identified Kelly as one of the individuals in the 7-Eleven surveillance video. (See Habeas Pet. at 7.) He does not argue in his habeas petition that his counsel was ineffective for failing to argue either that (1) Detective Litwin's testimony at the pre-trial hearing was insufficient to establish that Johnson's photographic identification of Kelly was merely confirmatory,[4] or (2) Kelly's adjudication as a persistent violent felony offender was unconstitutional under Apprendi.[5] Accordingly, Kelly has not established cause and prejudice for those two procedurally defaulted claims.

Even to the extent Kelly argues that his counsel was ineffective for failing to object to Detective Litwin's trial testimony, Kelly has not satisfied the requirements of Strickland v. Washington, 466 U.S. 668 (1984), to show that he received ineffective assistance of counsel on this basis, as set forth more fully below. Although ineffective assistance of counsel may establish cause, "[a]ttorney error short of ineffective assistance of counsel" does not. Murray v.

---

[4] Kelly, through appellate counsel, made this argument on direct appeal, but he has not raised it in the instant habeas petition. Indeed, in response to the government's argument that Kelly's Wade claim is procedurally defaulted, Kelly argues that it is not procedurally defaulted because his counsel did initially request a Wade hearing, (Pet'r's Reply at 1-2); this argument suggests that Kelly does not believe his counsel was ineffective during the pre-trial hearing.

[5] Even assuming Kelly argued in his habeas petition that his counsel was ineffective for failing to object to the enhancement of his sentence based on Apprendi, this would not establish cause for the procedural default because he did not raise an ineffective assistance of counsel claim on this basis on direct appeal. See Gibson v. Phillips, 263 F. App'x 78, 80 (2d Cir. 2008) ("[I]neffective assistance of counsel 'must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" (quoting Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000))).

11

Carrier, 477 U.S. 478, 492 (1986). Kelly therefore has not established cause for his failure to contemporaneously object to the admission of Detective Litwin's trial testimony.

Moreover, Kelly has failed to establish that he is "actually innocent" of the crimes for which he was convicted. A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006) (internal quotation marks and citation omitted). "[T]o be credible, a gateway claim requires new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." House, 547 U.S. at 537 (internal quotation marks and citation omitted).

Kelly has presented this Court with no evidence that he is actually innocent. To the extent Kelly requests a hearing before this Court to present evidence of his actual innocence, (see Pet'r's Reply at 5), he has provided no description of the alleged evidence of his actual innocence. Although "courts retain discretion to order an evidentiary hearing to assist in the development of evidence of actual innocence" that would permit an otherwise procedurally barred claim to be heard on the merits, "such a hearing is only justified if there is 'substantial support' for [the petitioner's] evidence." Diaz v. Bellnier, 974 F. Supp. 2d 136, 141 (E.D.N.Y. 2013) (citations omitted); see Lopez v. Miller, 906 F. Supp. 2d 42, 53 (E.D.N.Y. 2012) (granting evidentiary hearing on petitioner's gateway claim of actual innocence when he presented evidence that the main witness for the prosecution subsequently recanted her testimony; the only other witness described the perpetrator with characteristics very different from petitioner; and two people provided alibis for petitioner). Because Kelly's habeas petition and his reply to the government's opposition contain no support whatsoever for the alleged evidence of his actual

innocence, his request for a hearing is denied. Further, Kelly's failure to provide any support for his alleged actual innocence, coupled with the evidence of his guilt adduced at trial, forecloses the conclusion that he is factually innocent of the crimes for which he was convicted. The claims found unpreserved on direct appeal are therefore barred from habeas review.

## II. Merits

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court, moreover, may not grant the writ "with respect to any claim . . . adjudicated on the merits in State court proceedings" unless that ruling is either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). Courts consider a claim "adjudicated on the merits" when the state court found the claim to be unpreserved and, in any event, without merit. See Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (finding state court's alternative holding on the merits entitled to AEDPA deference).

A ruling on the merits is "contrary to" clearly established Supreme Court precedent "if it arrives at a conclusion opposite to that reached by th[e] Court on a question of law . . . or decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. An "unreasonable application" of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from th[e]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In determining whether an application is unreasonable, "the question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); see also Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009).

Although the Court finds that the majority of Kelly's claims are barred by the procedural default rule, these claims, as well as his ineffective assistance of counsel claim, are also without merit as set forth below.

A. Trial Court's Denial of Kelly's Request for a Wade Hearing

Kelly alleges that the trial court denied him due process by (1) relying on Detective Litwin's testimony in determining that Johnson's familiarity with Kelly rendered her pre-trial identification of Kelly merely confirmatory; and (2) based on this testimony, declining to hold a Wade hearing with respect to Johnson's pre-trial identification of Kelly. (Habeas Pet. at 6.)

In United States v. Wade, the Supreme Court recognized the "grave potential for prejudice" in pre-trial eyewitness identifications. 388 U.S. 218, 236-237 (1967). The Supreme Court has emphasized, however, "that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 132 S. Ct. 716, 724 (2012) (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)). Accordingly, "[t]he purpose of a Wade hearing is to determine . . . whether pre-trial identification procedures have been so improperly suggestive as to taint an in-court identification." Twitty v. Smith, 614 F.2d 325, 333 (2d Cir. 1979) (citing Wade, 388 U.S. at 242). Under New York law, a Wade hearing is not necessary for pre-trial identifications in which "the protagonists are known to one another" because, in this situation, "suggestiveness is

not a concern," and the identification is "merely confirmatory." People v. Rodriguez, 79 N.Y.2d 445, 452 (1992). If the government alleges that no Wade hearing is necessary on this basis, "[a] Rodriguez hearing is held to determine whether . . . the witness had sufficient familiarity with the defendant to eliminate the issue of police suggestiveness in the identification process." Allan v. Conway, No. 08-CV-4894(JFB), 2012 WL 70839, at *23 (E.D.N.Y. Jan. 10, 2012) (citation omitted).

Here, during the pre-trial hearing, the People argued that a Wade hearing was unnecessary because Johnson was sufficiently familiar with Kelly from the apartment complex where they both resided, rendering her identification of Kelly during the photo array merely confirmatory. (Jan. 4, 2007 Hr'g Tr. at 2-3.) The trial court subsequently held what was effectively a Rodriguez hearing, although it did not explicitly state that it was doing so, and heard testimony from Detective Litwin regarding Johnson's statements about her familiarity with Kelly. (Id. at 32-36.) During Detective Litwin's pre-trial hearing testimony, the People also introduced the photo array itself. (Id. at 34-35.) The trial court determined that the People had satisfied their burden as to "the Wade portion of the hearing," (id. at 36), and Johnson then identified Kelly at trial as one of the individuals she saw on July 30, 2005 near the maintenance room around the time OL was assaulted.

Notably, the record of the pre-trial hearing does not indicate that counsel for Kelly argued that the photo array was somehow suggestive, (id. at 3-4, 30-32), and Kelly has not advanced any argument regarding suggestiveness in his habeas petition, nor did he raise this argument in his direct appeal to the Appellate Division. Rather, he argues that the trial court denied him due process when it relied on Detective Litwin's testimony to establish Johnson's familiarity with Kelly, instead of requiring testimony directly from Johnson. This argument is meritless. It is

15

well-established under federal law that hearsay is admissible during pre-trial suppression hearings.[6] See United States v. Matlock, 415 U.S. 164, 172-73 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence."); see also Barnes v. Burge, No. 03-CV-1475(NGG), 2008 WL 4646172, at *4 (E.D.N.Y. Oct. 20, 2008) (finding that habeas petitioner's "claim regarding hearsay statements improperly admitted at the pre-trial Wade hearing must be denied because hearsay is generally admissible at pre-trial hearings to determine the admissibility of evidence."); Espinal v. Duncan, No. 00-CV-4844(RWS), 2000 WL 1774960, at *3 n.1 (S.D.N.Y. Dec. 4, 2000) (stating that habeas petitioner's claim that hearsay was improperly admitted during a Wade hearing, although unexhausted, was also "erroneous as a matter of law because hearsay is admissible in suppression proceedings").

Further, Kelly argues generally that the trial court denied him due process in declining to hold a Wade hearing. Although a Wade hearing "may often be advisable," the Supreme Court has stated that there is no per se constitutional rule requiring a pre-trial Wade hearing. Watkins v. Sowders, 449 U.S. 341, 349 (1981); see also Dunnigan v. Keane, 137 F.3d 117, 128-29 (2d Cir. 1998) ("Where there is a contention that the pretrial identification was the result of impermissibly suggestive procedures, a Wade hearing is advisable; but the Supreme Court has made it clear that there is no 'per se rule compelling such a [hearing] in every case.'" (abrogated on other grounds by Perry v. New Hampshire, 132 S. Ct. 716 (2012)) (quoting Watkins, 449 U.S. at 349)); Alvarez v. Fischer, 170 F. Supp. 2d 379, 385 (S.D.N.Y. 2001) ("[T]he Wade hearing does not derive from mandatory constitutional rule but rather is a discretionary procedure

---

[6] Although on federal habeas review, courts will not determine whether the state court properly applied state law, the Court notes that hearsay is also admissible during pre-trial hearings under New York state law. See N.Y. Crim. Proc. Law § 710.60(4).

grounded on the reliability of the identification evidence at issue."). Accordingly, Kelly's argument that the trial court denied him due process in declining to hold a Wade hearing fails.

Even assuming Kelly alleged that the photo array was impermissibly suggestive and Johnson's in-court identification of Kelly therefore denied him due process, this argument would be similarly unavailing. As an initial matter, the Appellate Division found that Kelly's claim that the trial court erred in not holding a Wade hearing was meritless because "the record of the Rodriguez hearing . . . supports the hearing court's determination that the witness was sufficiently familiar with the defendant so that her photographic identification of the defendant was merely confirmatory." People v. Kelly, 67 A.D.3d 706, 706-07 (2d Dep't 2009). This ruling constitutes adjudication on the merits, and this Court's review is therefore limited to whether the Appellate Division's ruling was contrary to, or an unreasonable application of, clearly established federal law.[7]

"Supreme Court precedent clearly identifies 'reliability' as 'the linchpin in determining the admissibility of identification testimony.'" Wiggins v. Greiner, 132 F. App'x 861, 864 (2d Cir. 2005) (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). The reliability inquiry proceeds in two steps: (1) "[t]he court must first determine whether the pre-trial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator"; and (2) if the court finds that the procedures were unnecessarily suggestive, "it must then determine whether the identification was nonetheless independently reliable." Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009) (citations omitted).

---

[7] To the extent Kelly attempts to argue that the state court erred in finding that the prosecution had established at the pre-trial hearing that Johnson's identification was "merely confirmatory" pursuant to People v. Rodriguez, 79 N.Y.2d 445 (1992), this issue of state law is not cognizable on federal habeas review. See Wiggins v. Greiner, 132 F. App'x 861, 865 n.3 (2d Cir. 2005) ("Whether the challenged photo display in this case clearly qualifies as a confirmatory identification is an issue of state law not relevant to our habeas review." (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991))). The Court therefore focuses on the relevant standards under federal law.

17

Here, the Appellate Division's determination was not contrary to, or an unreasonable application of, clearly established federal law. Regardless of the procedure used in connection with the photo array shown to Johnson—the circumstances of which Kelly has not provided to this Court—Johnson's identification was independently reliable. Detective Litwin testified at the pre-trial hearing that Johnson had seen Kelly at the apartment complex "numerous times" over the course of a month prior to the crime. (Jan. 4, 2007 Hr'g Tr. at 34.) It was also established, by testimony from both Detective Litwin and Johnson,[8] that Johnson knew Kelly by his nickname "Boo," (id. at 33-34; Trial Tr. at 444)—the same nickname by which both Cochrane and Voltaire knew Kelly. Further, Johnson testified that she knew Kelly as the brother of her neighbor in the 1495/1499 East 46th Street apartment complex, where she had lived for five years. (Trial Tr. at 443-47.) Based this evidence, Johnson's identification of Kelly was independently reliable in light of her familiarity with Kelly. See Wiggins, 132 F. App'x at 865 (rejecting habeas petitioner's claim that eyewitness's trial identification of petitioner as the murderer was tainted by suggestive pre-trial display of a single photograph when witness "had seen [petitioner] in the neighborhood two or three times per week over a period of seven months," and the witness's "independent ability to identify [petitioner] was demonstrated in an even more convincing manner: he provided his name."). Accordingly, Johnson's identification did not violate Kelly's due process rights.

---

[8] A court may look to the evidence adduced at trial in affirming a court's ruling at a pre-trial hearing even if that evidence was not presented at the pre-trial hearing, which, here, includes Johnson's trial testimony. See Wiggins, 132 F. App'x at 865 (concluding "from the totality of the circumstances evidenced by both the suppression hearing and trial records that the eyewitness had sufficient independent basis for making a reliable in-court identification"); United States v. Canieso, 470 F.2d 1224, 1226 (2d Cir. 1972) (stating that "settled law" permitted affirmance of a suppression ruling based on evidence "adduced at trial" but "not presented at the pretrial hearing").

B. Trial Testimony of Detective Litwin

Kelly further alleges that he was denied due process and a fair trial when Detective Litwin was permitted to testify at trial that Kelly was one of the individuals in the photographs derived from the 7-Eleven surveillance video. Kelly argues that Detective Litwin had "no better basis" than the jury for deciding whether Kelly was in fact the person in the photographs, and therefore should not have been permitted to give his opinion on this issue. (Habeas Pet. at 7.) Specifically, Detective Litwin's testimony on this point was as follows:

| [Prosecutor]: | All right. When you entered into [defendant's apartment at 1495/1499 East 46th Street], what, if anything, did you see? |
|---|---|
| [Detective Litwin]: | I saw a box which contained a blue bowling bag and a bowling ball inside the bag. I saw a digital camera. And I saw a pair of Nike Jordan sneakers in that box. I also saw a pair of men's sneakers, which were gray with a black stripe, Puma sneakers. I also saw a New York Yankees baseball cap. It appeared that the cap and the sneakers were the items that the defendant wore when he was depicted in surveillance photos from the 7-Eleven store on Utica Avenue. |

. . .

| [Prosecutor]: | Detective, you had just mentioned surveillance photographs from a 7-Eleven. Are those blowups of items that you were talking about? |
|---|---|
| [Detective Litwin]: | Yes, they are. |

. . .

| [Prosecutor]: | [Referring to a picture of the sneakers found in Kelly's apartment] What do you recognize those to be? |
|---|---|
| [Detective Litwin]: | I recognize these sneakers to be the sneakers on the defendant's feet [in the photograph derived from the 7-Eleven surveillance video]. |

(Trial Tr. at 277-78.) On direct appeal, the Appellate Division rejected this claim on the basis that it was unpreserved but, in the alternative, also found it to be without merit because "any

error in permitting that testimony was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the defendant would have been acquitted absent that testimony." People v. Kelly, 67 A.D.3d 706, 707 (2d Dep't 2009).

A state court's evidentiary determinations are generally not cognizable on habeas review, see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), "unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings," McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 73 (2d Cir. 2011) (citing DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004)). "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1986)).

Regardless of whether Detective Litwin's testimony was admissible under New York evidentiary rules,[9] the testimony, viewed in light of the entire record, was not sufficiently material to provide the basis for conviction or remove a reasonable doubt that would have otherwise existed. Aside from Detective Litwin's testimony that assumed Kelly was one of the individuals in the photographs derived from the 7-Eleven surveillance video, Voltaire testified that he went to the 7-Eleven with Kelly and similarly testified that Kelly was one of the individuals in the photographs. (Trial Tr. at 149, 163-67.) Moreover, the record at trial contained other evidence linking Kelly's clothing to clothing worn by one of the individuals in the photographs: a picture of the sneakers recovered from Kelly's apartment was admitted into

---

[9] The trial court's exclusion of similar testimony from Detective Potenza suggests that, if counsel had objected to Detective Litwin's testimony, it would have been excluded. (See Trial Tr. at 434 (sustaining objection to Detective Potenza's testimony that he "saw clothing [in the basement apartment] . . . that seemed to be the same clothing that [he] observed in a surveillance camera video.").)

evidence, which the jurors themselves were able to compare to the 7-Eleven photographs in the record, (id. at 278, 308-09, 437), and Johnson testified that she saw Kelly wearing a baseball cap on the morning of July 30, 2005, (id. at 445).

Beyond evidence placing Kelly at the scene of the 7-Eleven where OL's ATM card was used, Kelly's participation in all of the crimes was amply established by: the testimony of Cochrane and Voltaire, who both testified as to Kelly's involvement; the testimony of Beverly Johnson, who saw Kelly near the maintenance room in the basement of the apartment complex around the time OL was being sexually assaulted on July 30, 2005, (id. at 444); OL's testimony regarding the shoes worn by one of her assailants, (id. at 264); and the DNA evidence recovered from in and around the maintenance room, (id. at 325-26, 339). In light of the strength of the evidence against Kelly, the Court cannot conclude that he was deprived of a fundamentally fair trial when Detective Litwin identified Kelly as one of the individuals in the photographs derived from the surveillance video.

C. Ineffective Assistance of Counsel

Related to his claim that Detective Litwin's identification testimony at trial denied him due process, Kelly argues that his counsel's failure to object to this testimony constituted ineffective assistance of counsel. (Habeas Pet. at 7.) This claim was also raised on direct appeal and the Appellate Division rejected it on the merits, finding that Kelly's attorney had provided meaningful representation.[10] People v. Kelly, 67 A.D.3d 706, 707 (2d Dep't 2009).

_____

[10] On direct appeal, Kelly, through appellate counsel, also argued that trial counsel was ineffective for failing to object to the court's ruling that no Wade hearing was necessary because Johnson, who identified Kelly during a photo array, was sufficiently familiar with Kelly. (App. Br. at 39.) Although the government's opposition to Kelly's habeas petition also addresses this ineffective assistance of counsel claim, (see Gov't Opp. at 33-35), the Court notes that this claim is not raised in Kelly's habeas petition and his petition does not incorporate by reference his appellate brief. Although federal courts liberally construe a pro se litigant's filings, the Court will not read into Kelly's habeas petition entire claims he has not raised, even though they were raised before the Appellate Division. See Beatty v. United States, 293

Claims of ineffective assistance of counsel are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires that a defendant show (1) that counsel's representation was deficient, meaning that it "fell below an objective standard of reasonableness"; and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. Because the Appellate Division adjudicated the merits of Kelly's ineffective assistance of counsel claim, Kelly must prove that the state court either applied a rule that contradicts, or constitutes an unreasonable application of, this clearly established federal law. Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010). The Appellate Division in the instant case applied the New York state standard for ineffective assistance of counsel. The first prong of the New York standard tracks the first prong of Strickland, but the second prong differs from Strickland in that "'prejudice' is examined more generally in the context of whether defendant received meaningful representation.'" Rosario, 601 F.3d at 125 (quoting People v. Benevento, 91 N.Y.2d 708, 713 (1998)).

The Second Circuit has repeatedly emphasized that the New York standard for ineffective assistance of counsel is not contrary to Strickland and, accordingly, Kelly can only prevail on this claim if he establishes that the state court unreasonably applied Strickland. See Rosario, 601 F.3d at 126 (citing Henry v. Poole, 409 F.3d 48, 70 (2d Cir. 2005)). In order to show that the state court unreasonably applied Strickland it is not sufficient to show that the requirements of Strickland are satisfied. Henry, 409 F.3d at 67. Rather, there must be "an increment of incorrectness beyond error." Rosario, 601 F.3d at 126 (internal quotation marks and citation omitted).

F.3d 627, 632-33 (2d Cir. 2002) (finding abandoned claims that were initially presented in pro se § 2255 habeas petition, but were not subsequently mentioned in pro se petitioner's affidavits seeking a certificate of appealability). Even if the Court were to address this omitted ineffective assistance of counsel claim, it would find it to be without merit for the same reasons Kelly's other ineffective assistance of counsel claim is denied.

Here, Kelly cannot satisfy the requirements of Strickland, let alone show that there was some "increment of incorrectness beyond error" that renders the Appellate Division's determination unreasonable. Even assuming trial counsel's failure to object to Detective Litwin's trial testimony was objectively unreasonable, there is no reasonable probability that, but for this error, the result at trial would have been different. As discussed above with respect to Kelly's claim that Detective Litwin's identification of Kelly in the surveillance video denied him due process and a fair trial, in light of the other evidence of Kelly's guilt there is not a reasonable probability that the exclusion of this testimony would have caused the jury to reach a different result. See Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005) ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus."). Accordingly, counsel's failure to object to this testimony did not constitute ineffective assistance of counsel, and the Appellate Division's rejection of Kelly's ineffective assistance of counsel claim was not an unreasonable application of Strickland.

D. Persistent Violent Felony Offender

Finally, Kelly argues that the enhancement of his sentence pursuant to New York's persistent violent felony offender statute, New York Penal Law § 70.08,[11] violated Apprendi v. New Jersey, 530 U.S. 466 (2000), because it was based on findings made by the judge, rather than a jury. (Habeas Pet. at 9.) The Appellate Division, although finding that this claim was

---

[11] Section 70.08 mandates an enhanced prison sentence for a persistent violent felony offender, which is defined as "a person who stands convicted of a violent felony offense . . . after having previously been subjected to two or more predicate violent felony convictions." In determining if an individual has two or more predicate violent felony convictions, the court must look to section 70.04, which requires that the sentence for the previous conviction "must have been imposed not more than ten years before commission of the felony for which the defendant presently stands convicted" and provides that, in calculating this ten year time period, the period is tolled for "any period of time during which the person was incarcerated." N.Y. Penal Law § 70.04(b)(iv)-(v).

unpreserved, also found that "in any event, [it] is without merit." People v. Kelly, 67 A.D.3d 706, 707 (2d Dep't 2009).

The Appellate Division's alternative holding was not contrary to, or an unreasonable application of, clearly established federal law. Pursuant to Apprendi, "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). Section 70.08, which imposes an enhanced sentence based solely on the court's finding of qualifying prior convictions, falls within Apprendi's explicit holding that the fact of a prior conviction need not be submitted to a jury. Even to the extent the persistent violent felony offender statute requires the court to make a determination as to whether the previous convictions occurred within the preceding ten years and, if necessary, to conduct a tolling analysis, this does not violate clearly established federal law. See United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001) (stating that Apprendi allows a judge to "determine the 'who, what, when, and where' of a prior conviction"); see also Washington v. Graham, 355 F. App'x 543, 545 (2d Cir. 2009) (rejecting habeas petitioner's claim that section 70.08 violates Apprendi because adjudication of petitioner as a persistent violent felony offender did not violate clearly established federal law). Accordingly, Kelly's claim on this basis is denied.[12]

---

[12] The Court notes that courts in this Circuit routinely reject Apprendi challenges to New York's persistent violent felony offender statute. See, e.g., Chambers v. Conway, No. 09-CV-2175(JGK), 2011 WL 2226956, at *12 (S.D.N.Y. June 8, 2011); Adelman v. Ercole, No. 08-CV-3609(RJD), 2010 WL 3210718, at *5 (E.D.N.Y. Aug. 12, 2010); Boutte v. Poole, No. 07-CV-8412(GEL), 2008 WL 3166696, at *3 n.5 (S.D.N.Y. Aug. 4, 2008) (collecting cases rejecting Apprendi challenges to section 70.08).

24

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because Kelly has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: September 22, 2014
      Brooklyn, NY

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge
